IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DEBRA L. PARSOW, Individually and for her IRA Account,<br><br>Plaintiff,<br><br>vs.<br><br>PARSOW'S FASHIONS FOR MEN, INC., a Corporation, and PARSOW'S FASHIONS FOR MEN, INC. PROFIT SHARING PLAN,<br><br>Defendants. | 8:11CV297<br><br>MEMORANDUM AND ORDER |

    This matter is before the court on defendants' motion for summary judgment, Filing No. 63; plaintiff's motion for summary judgment, Filing No. 66; plaintiff's objection to index, Filing No. 70; plaintiff's motion for a hearing, Filing No. 74; and defendants' motion to strike, Filing No. 78.  Plaintiff brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1104(c) and 29 U.S.C. § 1132(e)(1) alleging that the defendants Parsow's Fashions for Men, Inc. Profit Sharing Plan ("Profit Sharing Plan") and Parsow's Fashions for Men, Inc. ("PFM") owes her additional death benefits under the company Profit Sharing Plan.  Plaintiff's husband, Steven Parsow, died on September 10, 2008, and plaintiff received a death benefit under the Profit Sharing Plan in the amount of $637,002.03 on April 29, 2009.[1]  Plaintiff is seeking to recover additional benefits under the Profit Sharing Plan as the beneficiary and surviving spouse of Steven Parsow.  She also contends that the defendants violated fiduciary obligations to her and asks the court to impose civil penalties and equitable relief under ERISA.

---

[1] Plaintiff also received a death benefit not related to the Profit Sharing Plan.  That death benefit is not at issue in this lawsuit.

## BACKGROUND

Plaintiff's husband, Steven Parsow, was an employee of PFM and a participant in the Profit Sharing Plan. Steven Parsow served as the plan administrator of the Profit Sharing Plan and Chairman of the Plan Investment Committee. He made and controlled the decisions regarding his own personal investments within the Profit Sharing Plan.

On November 20, 2007, Steven Parsow executed an Investment Election document and invested 100% of his assets under the Profit Sharing Plan in Elkhorn Partners Limited Partnership ("Elkhorn Partnership"). Filing No. 64-4, Ex. B, PFM0142 – PFM0143. He could have chosen other investment options, but he chose to invest all of his money in this one investment. The Investment Election form stated:

> To help achieve long-term retirement and security, you should give careful consideration to the benefits of a well-balanced and diversified investment portfolio. Spreading your assets among different types of investments can help you achieve a favorable rate of return, while minimizing your overall risk of losing money.

*Id.*, Ex. B, PFM0142. The plaintiff and Steven Parsow personally invested in Elkhorn Partnership for 15 years. In 2008, Elkhorn Partnership sustained significant losses.

Steven Parsow died of a bee sting on September 10, 2008. Three brothers were involved in the business: Steven, who is now deceased; David who acted as the chief operating officer of the company; and Alan who served as the director, shareholder and officer of PFM and who operates the separate business at Elkhorn Partnership. Elkhorn Partnership is a closed, invitation only, investment fund. During 2008 and into early 2009 the investors, including plaintiff, received notification from the Elkhorn Partnership of losses of approximately 6% as of April 14, 2008, losses of 34.1% as of October 19,

2008, and losses of approximately 44% as of the end of 2008. Filing No. 64-7, Ex. B, PFM0321 – PFM0329.

Two years later plaintiff filed this lawsuit alleging the death benefit was improperly calculated. On November 30, 2011, this court stayed the lawsuit and instructed the parties to allow for administrative review of the claims. On February 17, 2012, the plan administrator determined that the death benefit paid to the plaintiff was properly calculated under the terms of the Profit Sharing Plan. Filing No. 64-5, Determination, Ex. B, PFM0226 – PFM0229.

## STANDARD OF REVIEW

### A.  Summary Judgment

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that

3

there is a genuine issue for trial.'" *Id.* ( quoting *Celotex*, 477 U.S. at 324). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Id.* at 251-52 (1986) (noting the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Id.* at 251.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

A filing of cross-motions for summary judgment does not "necessarily indicate that there is not dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). Consequently, "where conflicting inferences as to a material fact may reasonably be drawn from the materials before the court, the case is not appropriate for summary judgment." *Id.*

### B. ERISA

Under ERISA, when a denial of benefits is challenged through judicial review, "the record that was before the administrator furnishes the primary for review." *Trustees of Electricians' Salary Deferral Plan v. Wright,* 688 F.3d 922, 925 (8th Cir. 2012); *see also Brown v. Seitz Foods, Inc., Disability Benefits Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998) (suggesting a district court should ordinarily limit its review to the evidence contained in the administrative record).

The underlying purpose of ERISA is to protect the interests of participants in employee benefit plans and their beneficiaries . 29 U.S.C. § 1001(b); *see also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113 (1989). Under ERISA, a plan "participant or beneficiary" may bring a "civil action" to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see CIGNA Corp. v. Amara*, — U.S. —, —, 131 S. Ct. 1866, 1871 (2011).

An administrator's decision is reviewed for an abuse of discretion when an ERISA plan grants discretionary authority to the plan administrator to determine eligibility for benefits. *Jobe v. Medical Life Ins. Co.*, 598 F.3d 478, 481 (8th Cir. 2010); *Bruch*, 489 U.S. 115. However, the district court should apply a de novo standard of review, rather than an abuse of discretion standard, when the "administrator did not exercise the discretion granted to it." *Alliant Techsystems, Inc. v. Marks*, 465 F.3d 864, 868 (8th Cir. 2006). A less deferential standard of review (de novo review) is also appropriate where there is material, probative evidence demonstrating that a serious procedural irregularity existed that caused a serious breach of the plan administrator's fiduciary duty. *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998), abrogated in

5

part by *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008); *see Wrenn v. Principal Life Ins. Co.*, 636 F.3d 921, 924 n.6 (8th Cir. 2011) (recognizing "[a]fter the Supreme Court's decision in *Glenn*, the Woo sliding-scale approach is no longer triggered by a conflict of interest," but "[t]he procedural irregularity component of the *Woo* sliding-scale approach may . . . still apply in our circuit post-*Glenn*); *Wade v. Aetna Life Ins. Co.,* 684 F.3d 1360, 1362 n. 2 (8th Cir. 2012).

"Where an ERISA plan grants the administrator discretion to determine eligibility for benefits and to interpret the plan's terms, courts must apply a deferential abuse-of-discretion standard of review." *Green v. Union Sec. Ins. Co*, 646 F.3d 1042, 1050 (8th Cir. 2011) ; *see also Bruch*, 489 U.S. 115. Under this standard, the court may only reverse a decision to deny ERISA benefits if the decision is "arbitrary and capricious." *Jackson v. Prudential Ins. Co. of America*, 530 F.3d 696, 701 (8th Cir. 2008). When a plan administrator or fiduciary "offers a reasonable explanation for its decision, supported by substantial evidence, it should not be disturbed." *Id*. (quoting *Ratliff v. Jefferson Pilot Fin. Ins. Co.*, 489 F.3d 343, 348 (8th Cir. 2007)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ratliff,* 489 F.3d at 346 (quoting *McGee v. Reliance Standard Life Ins. Co.,* 360 F.3d 921, 924 (8th Cir. 2004)). The discretionary decision of a plan administrator or fiduciary "is not unreasonable merely because a 'different, reasonable interpretation could have been made.'" *Id*. at 348 (quoting *Parkman v. Prudential Ins. Co. of America*, 439 F.3d 767, 773 (8th Cir. 2006)). However, when an insurer both evaluates claims for ERISA benefits and pays granted claims, a conflict of interest exists which may be relevant in determining whether the insurer abused its discretion in denying a claim. See *Jones v. Unum Provident Corp.,* 596 F.3d 433, 438 (8th Cir.

6

2010); *Chronister v. Unum Life Ins. Co. of America,* 563 F.3d 773, 775 (8th Cir. 2009); *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 112-15 (2008.)

## DISCUSSION

### 1. Profit Sharing Plan

Section 1104(c) allows the plan participants to make their own investment decisions regarding the assets contained in the Profit Sharing Plan and the fiduciaries under the plan are generally "relieved of liability for any losses that result" from these investment decisions. Filing No. 64-4, Ex. B, PFM0142. The plan documents in this case include the FNNI Defined Contribution Prototype Plan and Trust (Filing No. 64-3, Ex. B, PFM0041 – PFM0105), the Parsow's Fashions for Men, Inc. Profit Sharing Plan Adoption Agreement (the "Adoption Agreement") (Filing No. 64-2, Ex. B, PFM0001 – PFM0040), the Summary Plan Description (Filing No. 64-4, Ex. B, PFM0106 – PFM0133), as well as amendments adopted by PFM. Filing No. 64-4, Ex. B, PFM0140 – PFM0141. PFM was the named plan administrator of the Profit Sharing Plan and First National Bank of Omaha served as the nondiscretionary trustee of the plan. On July 13, 2007, the Board of Directors for PFM amended the Profit Sharing Plan to allow the participants to make their own decisions regarding investment in their individual accounts by choosing among several different options approved by PFM.

The issue in this lawsuit is whether the date used to value Steven Parsow's balance in the Profit Sharing Account was reasonable under the Profit Sharing Plan. There are two dates at issue in this lawsuit, January 1, 2013, and December 31, 2013. If the date of December 31, 2008, is used, as argued by the defendants, Steven Parsow's balance in the account is decreased by $487,695.10. If the earlier date of January 1, 2008, is used, as argued by the plaintiff, then the value of Elkhorn

7

Partnership is $166,815,830 which would give Steven Parsow an interest in the amount of $1,116,061.15 as of January 1, 2008.  Plaintiff argues that upon Steven Parsow's death, she should have received the value of his investment in Elkhorn Partnership ($1,116,061.15), plus any additional contributions made prior to his death ($8,410.98), plus any miscellaneous earnings ($225.00), which totals $1,124,697.13.  Instead, she received $637,002.03, which is $487,695.10 less than she claims.

> Article X, Section 10.15 of the Plan provides as follows:
>
> 10.15 VALUATION OF TRUST.  The Trustee must value the Trust Fund as of each Accounting Date to determine the fair market value of each Participant's Account Balance in the Trust.  The Trustee must also value the Trust Fund on such other valuation dates as directed in writing by the Plan Administrator or as the Adoption Agreement may require.

Plan, Article X, Section 10.15, Filing No. 64-3, Ex. B, PFM0085.

> Article I, Section 1.03 of the Plan defines the term "Accounting Date" as

follows:

> 1.03 "Accounting Date" means the last day of the Plan Year.  The Plan Administrator will allocate Employer contributions and forfeitures for a particular Plan Year as of the Accounting Date of that Plan Year, and on such other dates, if any, as the Plan Administrator determines, consistent with the Plan's allocation conditions and other provisions.

Plan, Article I, Section 1.03, Filing No. 64-3, Ex. B, PFM0044.  The plan further states that the net income, gains or losses are allocated to the individual participant accounts "in accordance with the daily evaluation method, balance forward method, weighted average method, or other method the Employer elects under its Adoption Agreement." Plan, Article XI, Section 9.08, Filing No. 64-3. Ex. B, PFM0077.  The method of valuation in this partnership was called "balance forward" which means the account is valued on a periodic but not daily basis.  The valuation date provides that the participants do not get daily valuations but are valued on the accounting date at the end

8

of each Plan year. Adoption Agreement, Article X, § 27, Filing No. 64-2, Ex. B, PFM0011.[2]

Upon Steven Parsow's death, the trust allocated losses to Steven Parsow based on the annual audit of Elkhorn Partnership by the McGladrey & Pullen accounting firm for the year ending December 31, 2008. An audit of Elkhorn Partnership was completed on or about April 3, 2009. The losses were reported to First National Bank as the trustee on April 16, 2009, and First National calculated the death benefit issued to the plaintiff in the amount of $637,002.03 on April 29, 2009. This amount reflects the losses allocated to Steven Parsow under the Profit Sharing Plan during 2008 in the amount of $487,695.10. Filing No. 64-5 and Filing No. 64-6, Ex. B, PFM0227; PFM0255 – PFM0257; PFM0279.

Plaintiff argues there is no provision for allowing a valuation date other than January 1, 2008. Plaintiff relies on the *Rothwell* case which states:

> If plans are valued only once a year, distributions are subject to market vagaries. Thus, if employees can elect to retire after the preceding but before the next valuation date, and the value of their account is fixed by the prior valuation, they can engage in market timing to avoid losses. A common means for benefit plans to control such variables is to use a "balance forward" valuation method. This method would normally fix a cut-off and distribution date. If employees elected a distribution before the cut-off, the distribution would be valued as of the preceding valuation date. On the other hand, if the election was made after the cut-off, it would be valued as of the next valuation date. This method is low cost, simple and easy to administer, spreads the losses and gains to all plan participants, and helps prevent market timing.

*Rothwell v. Chenango County N.Y.S.A.R.C. Pension Plan*, 2005 WL 2276023 *2, 36 (N.D.N.Y. Sept 19, 2005) (unpublished).

---

[2] The Adoption Agreement states that "daily valuations shall apply with respect to all investments other than Elkhorn Partners Limited Partnership." Filing No. 64-2, Ex. B, PFM0011.

The Plan gives the Administrator the following control:

> The Administrator has the complete power, in its sole discretion, to determine all questions arising in connection with the administration, interpretation, and application of the Plan (and any related documents and underlying policies). Any such determination by the Administrator is conclusive and binding upon all persons.

Summary Plan Description, Ex. B, PFM0131.

The court shall review the decision under the abuse of discretion standard.[3] Plaintiff first contends that there is a conflict of interest because Alan Parsow, a former shareholder and director of PFM, and the owner and general manager of Parsow Management LLC, which manages Elkhorn Partnership, allegedly controlled and operated the plan and caused the investment of the funds into Elkhorn Partnership. *See* First Amended Complaint, Filing No. 34, ¶ 8. This claim lacks merit, as first, Steven Parsow made all his own choices regarding the investment of his money, and second, neither Alan Parsow nor Elkhorn Partnership calculated the death benefit due to Steven Parsow. The plan trustee, First National Bank, made these calculations. Filing No. 64-6, Ex. B, PFM0280 – PFM0283.

The bank used December 31, 2008, as the calculation date. The court finds that this date is consistent with the Profit Sharing Plan documents. The Elkhorn Partnership agreement required that the market value of the partnership shall be determined "at the beginning and end of each Accounting Year." Filing No. 71-1, Parsow Aff., Ex. 1, § 6.1. Elkhorn Partnership's accounting year ran from January 1 through December 31. The plan received a reconciliation of its capital account at Elkhorn Partnership "for the year

---

[3] The court finds that a higher standard of review is not called for in this case. The plan gives the discretion to the administrator to make these determinations. There is no evidence of serious or procedural irregularities or a breach of fiduciary duty.

ended December 31, 2008." Filing No. 64-6, Ex. B, PFM0284 – PFM0287. The reconciliation stated the value of the plan's capital account with Elkhorn Partnership "as of December 31, 2008" and further set forth the total losses sustained for 2008. *Id.* at PFM0284 (emphasis added). First National Bank used this information to allocate the losses. The court finds the plan administrator did not abuse his discretion by finding the benefit was properly calculated and paid by the Plan Trustee.

With regard to the valuation, the court finds as follows. First, plaintiff is a legitimate beneficiary under the plan. Second, First National Bank as trustee acted independently in calculating the death benefit due and owing to Steve Parsow. Third, the trustee used the date of reconciliation of the Elkhorn Partnership for the year ending December 31, 2008. First National used this value to allocate losses among the plan participants for the year ending 2008. Fourth, the court finds the use of the December 31, 2008, date is not an abuse of discretion, as a reasonable person could have reached a similar decision in this case. *See Rutledge v. Liberty Life Assur. Co.*, 481 F.3d 655, 659 (8th Cir. 2007). Further, there is no evidence that anyone but First National valued the death benefit as of December 31, 2008.

Likewise, plaintiff's claims that defendants breached fiduciary obligations under 29 U.S.C. § 1104(c) are without merit.[4] The fact that these investments were not diversified is irrelevant. Steven Parsow had the option of diversifying his investments. He chose not to do so. He directed his investments to the Elkhorn Partnership. Section 1104(c) of ERISA relieves fiduciaries from any liability arising from losses caused by a

---

[4] It is arguable that ERISA does not even permit the plaintiff to pursue this claim. ERISA authorizes relief to the plan and not to the individuals in the plan under a breach of fiduciary duty claim. See 29 U.S.C. § 1109(a); § 1132(a)(1)(B). *Conley v. Pitney Bowes,* 176 F.3d 1044, 1047 (8th Cir. 1999); *but see Varity Corp. v. Howe,* 516 U.S. 489, 515 (1996)).

participant's individual exercise of control over assets. Id. See also LaRue v. DeWolff, Boberg & Assoc., Inc., 552 U.S. 248, 256 (2008). Plan managers are not liable for breach of fiduciary duty if: (1) the participant exercises independent control over the assets in the account; and (2) the participant is able to choose from a "broad range of investment alternatives." 29 C.F.R. § 2550.404c-1(b)(1) (2012). A "broad range of investment alternatives" means at least three alternatives. 29 C.F.R. § 2550.404c-1(b)(3). In the case before the court, it appears there were five options available to Steven Parsow. This argument is <u>frivolous</u> and without merit.[5]

2. *Documents*

Plaintiff contends the court should find that civil penalties apply to the defendants as defendants failed to produce certain documents to her during the course of this case. The court disagrees. First, it is clear that the plaintiff submitted sixty or more document requests to the defendants. Second, it is clear that the defendants produced and plaintiff received a copy of the plan documents, a complete copy of the administrative record, and all information subject to disclosure under ERISA. Third, the magistrate judge granted defendants' motion for a protective order denying a discovery request filed by plaintiff to obtain discovery outside of the administrative record. Filing No. 60. Section 1024(b)(4) states:

---

[5] Last, the plan administrator noted that on April 1, 2009, a Release of Claims was executed by Parsow's Fashions for Men, Inc. and the plaintiff and Elkhorn Partners Limited Partnership which stated:

> The parties hereby release and forever discharge each other, in all capacities, whether individually, as a fiduciary or in their corporate capacity, and their respective officers, directors, shareholders, partners, employees, representatives and agents, from any and all claims or cause[s] of action of whatever kind or nature whether now known or unknown, foreseen or unforeseen.

Release of Claims, Filing No. 64-7 and Filing No. 64-5, Ex. B, PFM0317; PFM0228. Plaintiff contends the release does not apply to the issues in this lawsuit. However, neither defendants nor the plaintiff developed this argument. Accordingly, the court will likewise not address it either, as there is not sufficient evidence to determine if it applies.

> The Administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4). Plaintiff received those documents. Filing No. 64-4 and Filing No. 64-5, Ex. B, PFM0147 – PMF0148; PFM0150; Ex. B, PFM0221 – PFM0222. The court finds this argument is without merit, as the plan administrator complied with ERISA in terms of documents produced.

### 3. Equitable Relief

Plaintiff asks for equitable relief in this case to disgorge the benefits from the fund that should be paid to her. The court disagrees. First, the court agrees with the defendants that plaintiff's remedy is set forth under Section 1132(a)(a)(B) of ERISA. Second, the court has concluded that she is not entitled to a remedy in any event. The court has already determined that none of plaintiff's claims have merit. Thus, there is no basis to award equitable relief.

### 4. Filing No. 70, Plaintiff's Objection to Defendants' Evidence Index (Filing No. 64-9)

Plaintiff objects to the affidavit of Alan Parsow offered by the defendants. Plaintiff contends the affidavit is outside the administrative record. Plaintiff has been limited to such record and was not permitted to conduct a deposition of Mr. Alan Parsow. The court is going to consider this affidavit as it relates to the Elkhorn Partnership. The court makes this determination because plaintiff makes a number of allegations regarding valuation dates and accounting year ends. The court notes that the affidavit is consistent with the terms of the Profit Sharing Plan and Elkhorn Partnership agreements. Section 6.1 of the Profit Sharing Plan states that the market value of the

partnership is determined at the beginning and end of each accounting year. A partner is permitted to receive his or share of the assets at the end of the accounting year, December 31, of the year in which he withdraws from the partnership. Section 9.3 of Partnership Agreement. See Filing No. 71-1, Ex. 1. Accordingly, the court concludes that this affidavit is permissible. In the alternative, the court notes the affidavit really adds very little to the argument in this case, as the information contained in the affidavit can generally be found in the documents presented at the administrative level and to this court. Consequently, even if the court chose not to receive the affidavit, the information is still available in the record.

### 5. Defendants' motion to strike allegations/arguments, Filing No. 78

Defendants ask this court to strike the allegations and arguments made by the plaintiff in her summary judgment motion which were not submitted during the administrative review of her claim. Defendants claim that the argument regarding use of the January 1, 2008, date under the plan was never raised by the plaintiff at the administrative level nor in the amended complaint. Defendants contend that plaintiff has not shown "good cause" for failing to submit this claim and evidence at the administrative review. See *Brown v. Seitz Foods, Inc. Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998) (good cause required). The court will likewise review this argument. Plaintiff raised the context of the argument, i.e., the method and amount of the calculation, at the administrative level. Further, because the court finds there is no abuse of discretion with the method and manner of the calculation, the argument is of no consequence in any event.

14

THEREFORE, IT IS ORDERED:

1. Defendants' motion for summary judgment, Filing No. 63, is granted.

2. Plaintiff's motion for summary judgment, Filing No. 66, is denied.

3. Plaintiff's objection to index, Filing No. 70, is denied.

4. Plaintiff's motion for hearing, Filing No. 74, is denied.

5. Defendants' motion to strike, Filing No. 78, is denied.

6. A separate judgment will be entered in accordance with this Memorandum and Order.

Dated this 16th day of July, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge